**Francisco Monllor LONG and Pura Zambrana De Monllor, Plaintiffs,**

v.

**CONTINENTAL CASUALTY CO., Defendant.**

**Civ. No. 557–69.**

United States District Court, D. Puerto Rico.

Dec. 31, 1970.

Harvey Nachman, San Juan, Puerto Rico, for plaintiffs.

Alex González, San Juan, Puerto Rico, for defendant.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

This Court, in addition to its other jurisdiction based on diversity of citizenship maintained by the rest of the federal courts throughout the United States, has for years exercised the so-called territorial jurisdiction emanating from section 863 of Title 48, United States Code, which provides, in the pertinent part:

> The United States District Court for the District of Puerto Rico shall, in addition to its other jurisdiction, have jurisdiction for the naturalization of aliens and Puerto Ricans, and, for this purpose, residence in Puerto Rico shall be counted in the same manner as residence elsewhere in the United States. Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Puerto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000, and of all controversies in which there is a separable controversy involving such jurisdictional amount and in which all of the parties on either side of such separable controversy are citizens or subjects of the character aforesaid. * * *

On June 2, 1970, Congress enacted a law, P.L. 91–272, which, among other things, repealed 48 U.S.C. § 863. Three jurisdictional problems arose immediately in relation with suits before this Court, specifically with regard to (1) cases in which the cause of action arose and were filed prior to June 2, 1970 (2) cases in which the cause of action arose prior to June 2, 1970 but were filed after said date, and (3) cases in which the cause of action arose after June 2, 1970.

The Court was faced with cases which comprised these three situations. The first one is now academic by reason of the fact that Congress, apparently aware that it had incurred in an oversight when it approved the repealing act on June 2, 1970 without including a savings clause to cover those cases already filed, enacted Public Law 91–450 to correct that situation. This last law requires that this Court now resolve that in cases filed before June 2, 1970 it retains jurisdiction and the same shall be disposed of in due time. The motions to dismiss

filed in innumerable cases of this nature shall be denied.

Classifications numbered two and three deal with one same constitutional problem. It should be noted at the outset that those cases whose causes of action arose before June 2, 1970, but which were filed subsequent to that date (situation numbered 2) shall meet the same fate as those suits whose causes of action arose after June 2. I shall discuss them jointly. Both depend on the answer to the allegation that Congress lacks the power to amend section 863 since it is part of its Compact with Puerto Rico and the People of Puerto Rico was not consulted.

The contention surrounding these two situations can be set forth as follows:

Since the repealing act was approved by Congress without consulting the Puerto Rican people, and since section 863 aforementioned was made a part of the Federal Relations Act as its section 41 and, finally, since the Federal Relations Act must be considered a part of the compact between Puerto Rico and the United States which was entered into during the constitutional process which took place between 1950 and 1952, the unilateral action of Congress is null precisely because the Puerto Rican people were not consulted.

As to the validity of the compact and its bilateral and binding nature, this Court has already expressed itself in United States v. Valentine (D.C.P.R., 1968) 288 F.Supp. 957. It now reaffirms the views voiced therein.

In Valentine a similar situation was presented and this Court disposed of it in a footnote merely saying, at page 981:

To say that the compact is irrevocable unilaterally is not to say that all of its detailed provisions are. It is only the essential provisions which cannot be revoked by one party acting alone: i. e., the provisions which establish Puerto Rico's status as a commonwealth with plenary domestic authority, its association with the United States, United States citizenship of its people, and such favorable concessions as its fiscal autonomy. There are peripheral provisions, however, which were retained in the Federal Relations Act because there was no place else to put them: e. g., the provisions governing procedures in this court. In regard to the Court, the only essential element of the Compact is that the agreement to associate with the United States provides the present basis for its existence. But since the Court is a federal one, it is properly governed by rules established by Congress alone. Hence, the fact that Congress has repealed 48 U.S.C. § 867 (§ 44 of the Federal Relations Act) in favor of uniform rules for jury selection throughout the federal judicial system does not affect the inviolability of the compact.

The present case, though similar, is not as simple as the Valentine case. However, it meets the same fate. The present situation regarding the additional or territorial jurisdiction of Puerto Rico, as stated in Valentine, is "peripheral" in nature. We do not dispose of it in a footnote because it is of greater importance. Yet, to us, the theory is identical.

 Whether the Compact has been violated seems now to be in issue. When Congress before 1952 legislated to reserve a special jurisdiction to Puerto Rico, a right then emanating from Article IV of the Constitution of the United States, it did so unilaterally and in the exercise of those powers. At no time during the process which evolved between the years 1950 and 1952 did Puerto Rico and the United States agree that Congress or the Puerto Rican government were bound to maintain the jurisdiction of their respective systems of courts untouched. It is conceivable that tomorrow the Legislature of the Commonwealth of Puerto Rico approve a law providing that Commonwealth courts shall not intervene in cases of a certain nature, Congress could not then charge Puerto Rico with the imputation that it violated the compact because in 1952 it

(Puerto Rico) had such jurisdiction. As a matter of fact and law, the Commonwealth of Puerto Rico, through its Legislature, could hold tomorrow that it will no longer exert jurisdiction over cases such as this. And, Congress having expressed itself similarly, it would be a no-man's land. Puerto Ricans cannot tell Congress that because of the Compact its courts are compelled to maintain jurisdiction over controversies in Puerto Rico in which Congress does not wish to interfere neither here nor in the States.

In view of the foregoing, all the motions to dismiss filed in this and all other similar cases, in situations described and numbered as one, shall be denied. Those filed in situations described and numbered as two and three shall be granted.

Judgment shall be entered accordingly in each and every case posing this same controversy.